UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH GIRK,<br><br>   Plaintiff,<br><br>  v.<br><br>JOE A. LIZARRAGA,<br><br>   Defendant. | Case No. 15-cv-05581-WHO<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner Joseph Girk seeks federal habeas relief from his state court conviction for two counts of first degree burglary and two counts of petty theft with multiple priors, and his "three strikes" sentence of 25 years to life for each of the burglary convictions. Girk challenges his convictions on the grounds that: (i) the trial court did not consider substantial evidence suggesting petitioner was incompetent to stand trial, and thus denied petitioner due process by failing to initiate competency proceedings; (ii) petitioner received ineffective assistance of counsel because his attorney failed to present evidence regarding his incompetency; and (iii) petitioner's "three strikes" sentence violates the Eighth Amendment. For the reasons set forth below, none of these claims have merit. Girk's petition for habeas relief is DENIED.

## BACKGROUND

The California Court of Appeal summarized the facts and procedure of the case as follows:

> On the evening to September 6, 2009, Edward Fuchs and his fiancé (now wife, Sarah Fuchs) left their home with their daughter to go to the Lake County Fair in Lakeport. They left at about 4:30 p.m., returning at about 9:30 p.m. When the family left the house, Fuchs closed the garage door, but stated that he did not know whether or not he had locked the doors to their house. While the couple was getting ready for bed, he noticed that a closet light was on, although he did not recall turning it on before they had left. The next morning, his fiancé, Sarah, found a toe ring that belonged to her on

> their bed; she went to put it back in her jewelry box, but found that the entire box was missing. Later, the couple found that other items were missing from their home, including clothes and a firearm. They also found that there were feces on their bathroom floor and on a hand towel in that room.
>
> The following day, September 7, 2009, a man named Jesse Monize called the Clearlake Police Department to report that he was witnessing a burglary being executed at the home of his neighbor, Christina Hill, who was not in her home at the time. The police arrived at that house, entered it, and found appellant in the process of stealing both jewelry and other property of Ms. Hill. Some of that property had already been placed in a black duffel bag which had been among the items stolen from the Fuchs's residence the preceding day. That bag also contained mail addressed to appellant and an identification card bearing his name as well as some of the clothing and jewelry taken from the Fuchs's residence.
>
> On March 5, 2010, the Lake County District Attorney charged appellant with two counts of first degree burglary (Pen. Code, § 459),[] two counts of petty theft with multiple priors (§ 666), and one count of receiving, concealing, etc., stolen property § 496, subd (a)). The district attorney also alleged that appellant had suffered three strikes under Penal Code section 667, subdivisions (b) through (i), and had served three prior prison terms (§ 667.5, subd. (b)).
>
> After a four-day jury trial in August 2012[]-with the defense offering no testimony witnesses-and less than an hour of deliberation, the jury convicted appellant of the burglary and petty theft counts. The court dismissed the fifth count on the basis that it had been superseded by the conviction on the fourth count.
>
> On October 19, 2012, the trial court denied appellant's motions to dismiss the prior strikes pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), and sentenced him to 55 years to life in prison.

Ex. A to Petition, *People v. Girk*, No. A137179, 2014 WL 2510503, at *2 (Cal. Ct. App. June 3, 2014). Girk's efforts to overturn his conviction in state court were unsuccessful. This federal habeas petition followed.

## LEGAL STANDARD

Under the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal district court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the

2

1  state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

**DISCUSSION**

**I.  THE CALIFORNIA COURT OF APPEAL REASONABLY DETERMINED THAT NO COMPETENCY HEARING WAS REQUIRED**

Girk argues that because substantial evidence was presented to the trial court suggesting that Girk was incompetent to stand trial, the trial court should have conducted a competency hearing and its failure to do so violated Girk's right to due process. Pet. at 37-61.

When a trial court is presented with "substantial evidence of incompetence" of a criminal defendant, "due process requires that [it] conduct a full competency hearing." *People v. Jones,* 53 Cal.3d 1115, 52 (1991); *see also Cacoperdo v. Dem*osthenes, 37 F.3d 504, 510 (9th Cir. 1994) ("due process does not require a court to order a psychiatric evaluation or conduct a competency hearing unless the court has a good faith doubt concerning the defendant's competence," based

3

upon a showing of "substantial evidence of incompetence"). "[S]ubstantial evidence of incompetence may arise from separate sources, including the defendant's own behavior" but "a defendant must exhibit more than bizarre, paranoid behavior, strange words, or a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist his defense counsel." *People v. Ramos*, 34 Cal.4th 494, 507-08 (2004); *see also United States v. Garza*, 751 F.3d 1130, 1134 (9th Cir. 2014) ("Relevant evidence falls into three broad categories: medical history, the defendant's behavior in and out of court, and defense counsel's statements about the defendant's competency."). On habeas review, as explained by the Ninth Circuit:

> [O]ur inquiry is not whether the trial court could have found the defendant either competent or incompetent, nor whether we would find the defendant incompetent if we were deciding the matter de novo. We review the record to see if the evidence of incompetence was such that a reasonable judge would be expected to experience a genuine doubt respecting the defendant's competence.

*Chavez v. U.S.*, 656 F.2d 512, 516 (1981).

Girk argues there was substantial evidence presented to the trial court that raised a question of competence, specifically: (1) his history of mental illness; (2) his history of suicide attempts; (3) his prescription of psychotropic drugs while he was serving his initial sentence, including anti-psychotics and anti-depressants; (4) his active use of an anti-depressant (Sinequan) during the trial proceedings that can cause significant side effects that "could" have interfered with his ability to appreciate the nature of the proceeding and assist his counsel; (5) evidence that he "might" be developmentally disabled; and (6) the odd facts and "juvenile" nature of the burglaries (including defecating on the bathroom floor and on the towels, and stealing personalized jerseys and other items of no value).

The main evidence that Girk suffered from mental health problems comes from a report prepared seven months prior to trial by Dr. Douglas M. Rosoff, the Medical Director of Mendocino County Mental Health in Ukiah in January 2012. Pet. at 18-19. Dr. Rosoff evaluated Girk "for the purpose of assessing his mental state at the time of the commission of the offense and to furnish recommendations that may be helpful in formulating a defense strategy." CT 490. In his report, Rosoff noted that prior to Girk's commission of the 2009 offenses, he had been in

4

county jail for over two years and had been "treated for psychiatric problems" and classified as CCCMS "due to serious mental health problems." CT 491. He was prescribed a number of anti-depressant and anti-psychotic medications during that time. *Id*. Rosoff also reported that Girk had attempted suicide at some point in prison. *Id*. However, as of January 2012, before trial, Rosoff concluded that Girk was "presently competent to stand trial." CT 492. He also concluded that Girk tolerated his Sinequan "without side effects." CT 490-491. The Rosoff report was not presented to the trial court until the October 2012, during sentencing and after Girk had been convicted.

In addition to Rosoff's report, Girk also relies on other facts. Prison medical records from 2009 show that he was prescribed various anti-psychotic and anti-depressant medications, and had been diagnosed with depression, dysphoric mania, and bipolar disorder. Dkt. No. 13, Declaration of Richard Such, Ex. B. Records during 2011 and 2012 (including during the trial) show that he was still on Sinequan in order to be "clear" for trial. *Id*., Ex. D at 41-43.[1] And, Girk argues that the trial court was (or should have been) aware of his mental health issues because his initial counsel had informed the trial court that he needed a continuation of trial to get Girk's psychological condition evaluated, explaining to the court that Girk had mental health issues, had been on anti-psychotic medicines prior to his release, and was off those medications at the time of the charged crimes. CT 191-194.

The California Court of Appeal considered this evidence and rejected Girk's due process argument. It wrote:

> [W]e have no difficulty in concluding that the trial court did not err in sentencing appellant without conducting a competency hearing regarding him.
>
> First of all, as noted above, in the trial court appellant presented no evidence at all, i.e., no witnesses and no documentary evidence in

---

[1] Respondent objects to the exhibits to the Such declaration as evidence in support of the argument that the trial court should have held a competency hearing, as those records and evidence were not before the trial court. *See, e.g., Maxwell v. Roe*, 606 F.3d 561, 565 (9th Cir. 2010) (the relevant evidence is that "known by the trial judge at the time of trial"). Even considering that evidence on this claim, it does not add up to substantial evidence or show that the Court of Appeal's decision was contrary to or an unreasonable application of established federal law.

> either the jury trial regarding the alleged offenses or the subsequent court trial regarding appellant's previous convictions.
>
> Second, in his several motions to continue the trial, appellant's pleadings referred, and referred only to his mental state 'at the time of the alleged offence.' They did not, in any way purport to raise an issue of his competency during or after trial.
>
> Third, the only actual evidence before the trial court regarding appellant's mental and emotional state was presented by the defense *at appellant's sentencing hearing* and successfully moved into evidence at that hearing. It was a pleading entitled 'Statement of Circumstances in Mitigation' to which was attached the three-plus page, single-spaced report of Dr. Rosoff.
>
> Appellant contends that, somehow, the Rosoff report aids his claim that there was, before the trial court, evidence of the lack of competency of appellant; we strongly disagree. Indeed, that report is absolutely to the contrary. After detailing appellant's apparent long-standing addition to both alcohol and various drugs, his numerous criminal convictions and his "nearly thirty years of confinement within state prison", Dr. Rosoff concluded, as set forth fully above, that appellant 'is *presently competent to stand trial*' and that '[b]ased upon his own account of the offense he was not delusional, psychotic or criminally insane.' That letter was written less than three months before the trial.

*People v. Girk*, 2014 WL 2510503, at *5.

The California Court of Appeal reasonably determined that a competency hearing was not required. First, there was no argument or evidence presented at trial suggesting that Girk was incompetent to stand trial. *See, e.g., Boyde v. Brown*, 404 F.3d 1159, 1167 (9th Cir.), *as amended on reh'g*, 421 F.3d 1154 (9th Cir. 2005) ("perhaps the most telling evidence that Boyde was competent at trial is that neither defense counsel—who would have had every incentive to point out that his client was incapable of assisting with his defense—nor the trial court even hinted that Boyde was incompetent.").[2] Second, there is no evidence that any of Girk's behaviors *during* trial should have caused a reasonable jurist to have significant doubts about Girk's competency.[3]

---

[2] This case, therefore, is unlike *Pate v. Robinson*, 383 U.S. 375 (1966), where four lay witnesses expressed their opinion that the petitioner – who had been hospitalized at a psychiatric institution, killed his son and years later his wife and another person, attempted suicide, and expressed no recollection of his crimes – was insane *and* counsel argued at trial that defendant was not guilty by reason of insanity and that he was insane at the time of trial. It is also unlike *Drope v. Missouri*, 420 U.S. 162 (1975), where petitioner's suicide attempt during the trial, when considered together with the psychiatric information and the testimony of his wife at trial, created a sufficient doubt of petitioner's competence to stand trial to require further inquiry.

[3] This case, therefore, is also unlike *People v. Pennington*, 66 Cal. 2d 508 (1967) where despite

6

Finally, and most significantly, the only psychiatrist to evaluate Girk (Dr. Rosoff) clearly stated in his report that appellant "is *presently competent to stand trial*." CT 492. While that opinion was given seven months prior to the August 2012 trial, there is nothing in the record suggesting that Girk's mental state degenerated after that time or during trial. In reaching the decision that Girk was not presently incompetent, Dr. Rosoff evaluated the Clearlake Police Department Arrest Report and the State of California Prison Health Care Services Medical Records. *Id*. He concluded:

> A brief assessment of current trial competency reflects no present psychotic symptoms, delusions or unmanageable behavioral problems causing him to be unable to continue with his criminal proceedings. He has an overall reasonable grasp of the nature and purpose of his criminal proceedings, his current criminal charges and although reluctant and avoidant in discussing the events surrounding his arrest, is able to furnish case relevant facts and cooperate with defense counsel. Despite learning disabilities, he is *presently competent to stand trial*.

*Id*. (emphasis in original).

Girk likens his case to *People v. Ary*, where the California Court of Appeals reversed a murder conviction because there was substantial evidence that the defendant was mentally retarded. 118 Cal.App.4th 1016, 20 (2004). There, two healthcare professionals testified that the defendant *was* mentally retarded. *Id*. at 1021-22. There is no such testimony here, only the passing reference by Rosoff that despite "learning disabilities" Girk was competent to stand trial. Girk also relies on *Moran v. Godinez,* 972 F.3d 263 (9th Cir. 1992). There, the Ninth Circuit held that the trial court erred in failing to conduct a competency hearing when a defendant fired his attorneys and pleaded guilty to a capital offense, when the court knew of defendant's attempted suicide (at the time of the capital offenses), defendant's ongoing depression, defendant's terse responses to the court's questioning, and defendant's intent to plead guilty and put on no mitigating evidence. The court also failed to consider the effect of defendant's medications during

---

being found competent to stand trial by four psychiatrists prior to trial, defendants bizarre and irrational behavior during trial and a psychiatric opinion presented during trial that defendant was insane was sufficient "substantial evidence" of defendant's incompetency.

trial on his competency. Those factors are wholly absent here.[4] Finally, the fact that Girk may have committed bizarre behaviors during the burglaries and stolen items of no or inconsequential value, cannot by themselves call into question his mental competency at the time of trial. *See, e.g., United States v. Garza*, 751 F.3d 1130, 1136 (9th Cir. 2014) ("Where the defendant's mental problem—even if severe—has no discernible impact on the proceedings, we have not found substantial evidence.").

This claim fails.

## II. GIRK'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM FAILS

Related to the prior argument, Girk contends that his attorney's failure to present evidence during the trial and at the sentencing hearing about his mental health issues and related incompetency meant his counsel was constitutionally ineffective. The evidence Girk argues should have been adduced is: (1) evidence that Girk was taking a specific level Sinequan, a psychotropic medication that causes side-effects that "could" have affected Girk's ability to understand and assist his counsel during the proceedings; and (2) evidence regarding Girk's borderline intellectual functioning. Pet. at 61-66. This claim was raised in Girk's state court Petition for Habeas Corpus, Ex. 11, and the California Supreme Court summarily denied the claim.

In order to show constitutionally ineffective assistance of counsel, a petitioner must establish that their attorney's representation fell below an objective standard of reasonableness, despite application of a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. 668, 687-689 (1984). The petitioner must also demonstrate "a reasonable probability" that but for the errors, the result of the proceeding would have been different. "A reasonable probability" is a "probability

---

[4] So too are the factors present *Miles v. Stainer*, 108 F.3d 1109, 1111 (9th Cir. 1997). There the trial court's failure to consider whether defendant was currently taking his anti-psychotic medications before accepting defendant's guilty plea – where the record contained multiple conflicting opinions about the defendant's competence and at least one opinion concluded defendant would be competent only if he continued to take his medications – was a denial of due process.

8

sufficient to undermine confidence in the outcome." *Id*. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding"-- the errors must be "so serious" as to "deprive the defendant of a fair trial." *Id*. at 687, 693.

On habeas review, where "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden must still be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Therefore, the court must "determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id*. at 102. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. at 101.

Here, the California Supreme Court could have reasonably denied Girk's claim because he failed to demonstrate both incompetence and prejudice. As an initial matter, his trial counsel's defense strategy was not unreasonable. Girk argues that the trial attorney did not research and present to the court the side-effects of taking Sinequan, which include drowsiness, dizziness, confusion, and disorientation. Traverse at 14. However, there is no evidence that Sinequan affected Girk's competency during trial. Instead, the evidence from Dr. Rosoff's report is that only seven months earlier, Girk was tolerating a "high dose" of that medication. Girk's counsel knew about the medication, knew about Rosoff's statements, and saw Girk during trial. It was not unreasonable for the California Supreme Court to conclude that counsel's alleged failure to research potential side effects that "could" affect Girk, when there was no evidence it was affecting him, was not ineffective assistance of counsel.[5]

---

[5] Girk appears to argue that "evidence" of Girk's incompetence at trial includes that Girk rejected the prosecution's offer of a 17-year determinative sentence. Pet. at 62. However, the trial record shows that the 17 year offer was a "counteroffer" made by Girk. 2 RT 320, 321, 324. Dr. Rosoff's report indicates that an "offer of seventeen years to life" had been "presented" but that Girk hoped for residential treatment instead. CT 491-492. If accurate, Dr. Rosoff's report on his conversations with Girk show that Girk, at least as of January 2012, was able to consider and propose alternatives, even if, as Girk's counsel points out in his Traverse, a sentence of residential treatment was not possible (and highly unlikely) unless his priors were dismissed. Traverse at 16.

9

In addition, the California Supreme Court could also have reasonably concluded that counsel made a strategic decision to not focus – at trial or sentencing – on the issue of competency, in order to portray Girk at sentencing as someone who understood his actions and showed remorse for them. Indeed, at sentencing trial counsel submitted letters and the testimony of petitioner's brother to convey that petitioner understood that his actions were wrong and regretted them, that he committed his crimes as a result of substance abuse, and, accordingly, would benefit from rehabilitation. RT 308, 309, 320-322; CT 478-480. If trial counsel were to show proof of incompetence, this would have harmed the sentencing strategy that characterized defendant as someone who was rational and regretful.

Similarly, there is no evidence in the record that Girk *in fact* exhibited signs of "borderline" intellectual functioning that impacted his abilities to comprehend and assist at trial, such that his attorney provided ineffective assistance of counsel. Dr. Rosoff did not conclude that Girk had "borderline intellectual functioning," only that Girk had impaired attention and memory (and noted the existence of learning disabilities); Rosoff concluded that those disabilities did not render him incompetent. CT 492-493. Girk also relies on prison medical records (that were not before the trial court) indicating that he had "borderline intellectual functioning, poor memory, and impaired attention and concentration." Even if I considered this, those records do not expressly contradict Rosoff's findings (that *were* brought to the trial court on sentencing) that Girk had some significant mental deficits but was nonetheless competent at least as of January 2012. Because there is *no significant evidence* in the record to show that Girk may have been incompetent at the time of trial, his trial counsel's failure to bring the potential impact of side-effects of Girk's medication and Girk's intellectual functioning issues to the court's attention in aid of a competency hearing does not support a claim of counsel incompetence. There is, therefore, no need to address prejudice under the second *Strickland* prong.

The ineffective assistance of counsel claim is denied.

### III. THE COURT OF APPEAL REASONABLY DETERMINED THAT GIRK'S SENTENCE DID NOT VIOLATE THE EIGHTH AMENDMENT

Girk argues that his sentence for 50 years to life for two convictions of residential burglary with only prior non-violent convictions violates the "gross proportionality" principle established by the Supreme Court.[6] In addressing his Eighth Amendment argument, the California Court of Appeals relied on *In re Coley*, 55 Cal.4th 524 (2012). There, the California Supreme Court examined the most recent "U.S. Supreme Court's rulings on the impact of the Eighth Amendment on a criminal law sentence, and explain[ed] why a sentence based on the Three Strikes law and the numerosity of prior criminal offenses committed by the sentenced defendant is usually valid under federal constitutional law." *People v. Girk*, 2014 WL 2510503, at *8.

In *In re Coley*, the Court affirmed the 25–year–to–life sentence of a defendant who had many prior "serious" felony convictions, but was most recently prosecuted only for neglecting to update his sex offender registration within the required time period. *In re Coley* (2012) 55 Cal.4th 524. As explained in *Coley*, "it is now firmly established" that the concept of proportionality is central to the Eighth Amendment and "the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to the offense.'" *Id*. at 538 (quoting *Graham v. Florida*, 560 U.S. 48, 59 (2010). That determination depends not only on whether the "triggering offense" "bore both a rational and substantial relationship to the antirecidivist purposes of the Three Strikes law" but also considers the nature and extent of the defendant's previous criminal history. *Id*. at 531.

In this case, the California Court of Appeal "had no difficultly" applying the teachings from *Coley* and concluding that the sentence imposed was Girk was not in violation of the Eighth Amendment.

> The trial court had before it a defendant who had suffered three prior strikes under the Three Strikes law (§ 667, subd. (b)-(i)), had served three prior prison terms, all resulting in 30 years of prison confinement, and findings of over 50 parole violations by the time he was 47 years old. In the present case, he was convicted of two

---

[6] In his Petition, Girk reiterates the arguments he made in his California petition, including two arguments that his sentence violates California law. The arguments about state law cannot create a basis for relief on his federal habeas petition. I will address Girk's arguments as recharacterized in his Traverse, focusing on disproportionality under the Eighth Amendment.

11

> separate and distinct counts of first degree burglary, one committed on September 6, 2009, and the other the following day, and these were not the only similar convictions in appellant's record. According to the probation officer's report, he was convicted of possession of stolen property in 1985, of second degree burglary in 1988, of receiving stolen property in 1993, 2000, and 2006, and of first degree burglary in 2001.
>
> Under these circumstances, we have no difficulty in concluding that the sentence imposed on appellant under the Three Strikes law was not cruel or unusual punishment under the United States Constitution

*People v. Girk*, 2014 WL 2510503, at *9.

Girk attempts to distinguish *Coley* on the ground that his prior convictions (for second degree burglary, receipt of stolen property, and first degree burglary; none of which were violent felonies) are not comparable to the prior convictions in Coley that were "extremely serious" and "heinous." While not particularly heinous, Girk's criminal history was extensive and resulted in significant prison time. Those prior convictions, combined with his also significant history of parole violations, crated a reasonable basis to conclude that application of the "three strikes" sentence seeking to punish recidivist criminals was appropriate.

The facts of this case fall closer to those addressed by the United States Supreme Court in *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). There, the Court upheld a sentence of two consecutive terms of 25 years to life for stealing approximately $150 in videotapes based in large part on the petitioner's lengthy history of prior non-violent felonies. Similarly, in *Ewing v. California*, 538 U.S. 11, 29 (2003), a plurality of the Court upheld a 25 years to life sentence for stealing three golf clubs in light of the petitioner's "long history of felony recidivism," when the prior convictions were for serious but not violent crimes. *See id*. at 29-30 ("Ewing's sentence is justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by his own long, serious criminal record. Ewing has been convicted of numerous misdemeanor and felony offenses, served nine separate terms of incarceration, and committed most of his crimes while on probation or parole. His prior 'strikes' were serious felonies including robbery and three residential burglaries. To be sure, Ewing's sentence is a long one. But it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated.").

The California Court of Appeal's decision was not contrary to or an unreasonable application of federal law. This claim fails.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED.

**IT IS SO ORDERED.**

Dated: October 6, 2017

William H. Orrick
United States District Judge